## A06A0675. HEAD v. THE STATE.
### (631 SE2d 808)

SMITH, Presiding Judge.

James Head appeals from his convictions of armed robbery, possession of a firearm during the commission of a crime, false imprisonment, and hijacking a motor vehicle. Head asserts that insufficient evidence supports his convictions, that the trial court erred by giving an overly broad jury charge on armed robbery, and that his trial counsel was ineffective. Finding no reversible error, we affirm.

1. On appeal, we must view the evidence "in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Citations and punctuation omitted.) *Williams v. State,* 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995). Viewed in this light, the record shows that Cheyenne Goggins went to a pizza restaurant shortly before it closed. While he was waiting for his pizza, a man, whom he later identified as Head, came to the door and asked if the store was still open. After Head entered the store and walked past Goggins, he returned to Goggins with a rag covering his face and placed a gun in his side. Head ordered everyone present into the cooler except for the restaurant's manager. Goggins testified that

Head was wearing a black "Kangol" cap. A restaurant employee also testified that the robber was wearing a black Kangol hat.

The manager testified that when she first saw the robber, his mouth was covered. After the robber ordered everyone else into the cooler, he pointed the gun at her and ordered her to give him the money from the cash register and the safe. After the manager gave him the money, the robber asked if she had a car and took the keys to her white 1998 Ford Escort. He then ordered her into the cooler, where she triggered a silent alarm.

The day after the robbery, a police officer stopped behind a white Ford Escort at a traffic light and ran its tag number. When he discovered the car was stolen, he called for backup and stopped the car. Head, who was driving the restaurant manager's car and wearing a black Kangol hat, was arrested.

Goggins identified Head as the robber in a photo lineup and at trial. Goggins, a former military police officer, testified that he was trained to "recognize and remember" what he sees and that he used this training to remember Head's face.

Head asserts this evidence is insufficient to support three of his four convictions because only one witness, Goggins, was able to identify him. Head argues that since three of the crimes were committed against the restaurant manager after Goggins had been ordered into the cooler,[1] Goggins' identification cannot be used to support them. We find no merit in this argument because only one robber entered the restaurant and a jury could reasonably infer that the man identified by Goggins also committed the crimes involving the manager. See *Frazier v. State*, 249 Ga. App. 463, 467 (6) (549 SE2d 133) (2001) (State's case "may be proved by circumstantial evidence or inferred from circumstances which would excite the suspicions of an ordinarily prudent man") (citation, punctuation and footnote omitted).

Head also asserts that we should find the evidence insufficient based upon his "alibi" testimony that he was somewhere else at the time the crime was committed. This testimony conflicted with Goggins' testimony that Head was the person who committed the robbery, and "the jury was authorized to disbelieve the alibi testimony." (Citation omitted.) *Mickens v. State*, 277 Ga. 627, 629 (593 SE2d 350) (2004). We find the evidence sufficient to sustain Head's convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] Head's convictions of armed robbery, hijacking a motor vehicle, and possession of a firearm during the commission of a felony arose out of his conduct toward the restaurant manager. The false imprisonment charge arose out of his conduct toward Goggins.

2. Head claims that the trial court erred by charging the jury that "a person commits the offense of armed robbery . . . by use of an offensive weapon or any replica, article, or device having the appearance of such weapon." He argues that because the indictment specifically alleged armed robbery "by use of a handgun," the jury was erroneously instructed that armed robbery could also be committed by use of a replica.

> A jury charge that deviates from the language of the indictment violates the defendant's right to due process of law when evidence has been introduced at trial that would support a conviction on the unalleged manner of committing the crime, and the jury has not been instructed that it must limit its consideration to the manner specified in the indictment.

(Citation omitted.) *Herndon v. State*, 253 Ga. App. 543, 548 (4) (559 SE2d 749) (2002).

In this case, the trial court informed the jury that Head was charged with armed robbery "by use of a handgun" by reading the indictment to the jury. The trial court did not, however, "instruct the jury to limit its consideration of [the offense] to only the method set forth in the indictment, and not to consider [it] as having occurred in another manner charged." *Chapman v. State*, 273 Ga. 865, 868 (2) (548 SE2d 278) (2001). We therefore must decide whether the evidence presented supported a conclusion by the jury that Head "committed armed robbery by means of a 'replica, article or device having the appearance of an offensive weapon.'" *Herndon*, supra, 253 Ga. App. at 548 (4).

Head argues this is such a case because evidence was presented that two .22 caliber bullets were found in Head's pocket at the time of his arrest and Head testified that these bullets came from a squirrel hunting rifle. We find no merit in this argument because this is not evidence of a replica having the appearance of an offensive weapon. Additionally, all the eyewitnesses testified that the robber was holding a handgun. Considering the charge in its entirety in connection with the evidence adduced at trial, we find that the jury could not have been misled into convicting Head of armed robbery by any means other than as charged in the indictment. *Herndon*, supra, 253 Ga. App. at 549 (4).

3. Head contends his counsel was ineffective because he improperly bolstered the credibility of a State's witness and failed to object to the State's introduction of improper evidence of his bad character.

The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation, punctuation and footnote omitted.) *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001).

Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one.

*Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993). "A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous." (Citations and punctuation omitted.) *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992).

(a) Head contends he received ineffective assistance of counsel because his attorney bolstered the credibility of a State witness. The record shows that during cross-examination of the detective who investigated the robbery scene, Head's attorney questioned him about why he did not indicate in his report that he had looked for fingerprints and found none. After a bench conference requested by the State, Head's counsel apologized to the officer for cross-examining him about another officer's report.

Q. Detective . . . , I apologize on that. I was looking at the responding officer's report who says nothing about that, and I want to make that correction to the jury, I'm not trying to mislead them or you. So. You said you did something, we all trust you because you're under oath; correct sir?
A. Yes, ma'am.
Q. Okay. I'm not trying to mislead anyone. I apologize.

Head asserts that his counsel should not have said that she trusted the detective because he was under oath as this statement expressed her personal belief in his veracity. While we might agree that counsel could have chosen her words more carefully, it is also

possible that counsel's statement reflected favorably upon the defense by demonstrating to the jury that it would not seek to gain advantage by attempting to set traps for prosecution witnesses.

Moreover, Head fails to show how the alleged bolstering of the detective's testimony "so prejudiced his defense as to affect the outcome of his trial." *Mency v. State*, 228 Ga. App. 640, 645 (2) (c) (492 SE2d 692) (1997). "We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result." (Citation omitted.) Id. at 642 (2). In this case, it is unlikely that trial counsel's overzealous apology to the witness affected the outcome of the trial. See id. The trial did not turn on the detective's credibility. An eyewitness identified Head as the robber, and he was arrested while driving the stolen car and wearing the same style hat as the robber.

(b) Head contends that he is entitled to a new trial because his counsel failed to object when the State introduced evidence that he appeared drunk at the time of his arrest as well as when the detective first attempted to interview him. At the hearing on the motion for new trial, Head's trial counsel testified that her failure to object to this testimony was not a part of her trial strategy and that she believed it was very damaging to Head's character. The record shows that Head was not charged with driving under the influence. As a result, this evidence was "neither relevant nor admissible," *Weems v. State*, 269 Ga. 577, 580 (3) (501 SE2d 806) (1998), and counsel should have objected.[2] See also *Browning v. State*, 236 Ga. App. 893, 894 (2) (513 SE2d 779) (1999) (evidence defendant arrested for DUI while driving stolen car inadmissible in theft by taking trial).

Despite trial counsel's error, however, we do not find that a reversal is warranted. Given the identification of Head as the robber by a victim with skill and training in observation and recall, Head's possession of the stolen car, and the fact that he was wearing the same style hat as the robber when arrested, we find no reasonable possibility that the outcome of the proceedings would have been different if Head's counsel had objected. *Weems*, supra, 269 Ga. at 580 (3); *Shelton v. State*, 252 Ga. App. 444, 448 (3) (556 SE2d 540) (2001).

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED JUNE 1, 2006.

---

[2] We recognize that in some cases, counsel might make a strategic decision not to object, but that is not the case here.